No. 47,197

GARVEY CENTER, INC., *Appellee*, v. FOOD SPECIALTIES, INC., *Appellant.*

(519 P. 2d 646)

Opinion filed March 2, 1974.

*Terry G. Paup,* of Regan, Sargent, Klenda, McGannon, Paup and Glickman, of Wichita, argued the cause, and *Byron E. Anderson,* of the same firm, was with him on the brief for the appellant.

*Edmund R. Learned,* of Learned, Craig and Foley, P. A., of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: The basic issue in this case is the proper interpretation of the rental provisions of a commercial lease.

The lease was dated December 28, 1970, and covered restaurant space in the Kiva shopping center in Wichita. The plaintiff Garvey Center, Inc., was lessor and defendant Food Specialties, Inc., was lessee. The rental provisions (which will be quoted) called basically for a minimum rent of $1,915.21 per month against 8% of gross sales.

The first year of occupancy under the lease ran from September, 1971, to September, 1972. The base rent was paid for this period

and for the two following months. However, beginning in December, 1972, the lessee began withholding its rent. This action was brought by the lessor on February 27, 1973, for $5,745.63, representing the three monthly payments of base rent which had been missed at that time.

The defendant filed no answer but did file a motion for summary judgment, alleging that 8% of its gross sales for the first lease year was less than the base rent already paid for that year by $5,019.32. It contended that under the "annual adjustment" provisions of the lease it was entitled to a refund of that amount; if that amount were credited against the rent claimed by the plaintiff only $726.31 would be due. Defendant had tendered the $726.31 and its tender had been refused.

Plaintiff filed a reply to defendant's motion, together with its own motion for summary judgment. Plaintiff conceded defendant's gross sales figures, but disputed its contention that a refund was due. Plaintiff's position was that under no circumstances could the rent be less than the "minimum rental" specified in the lease. The minimum was due, it asserted, regardless of how low the tenant's gross sales might fall.

In this posture the case was submitted to the trial court, which granted plaintiff's motion and rendered summary judgment for the $5,745.63 prayed for. Defendant has appealed, contending for various reasons that the trial court misconstrued the lease and erred in not rendering judgment for it rather than the plaintiff.

The pertinent provisions of the lease follow, summarized where possible and emphasized where deemed of particular importance:

"4. RENT. LESSEE covenants and agrees to pay LESSOR, as rental on LEASED PREMISES, the following:

(a) Base Rent. A *fixed minimum rental* of $344,737.80 (344,737.80 dollars) which rental shall be paid in equal monthly installments of $1,915.21 (1,915.21 dollars) on the first day of each month during the term hereof, except that LESSEE shall pay, on the first day of the first month of the term hereof, both the first and last monthly installments of rental, and except further that if LESSEE shall commence doing business from LEASED PREMISES prior to the term hereof, base rent shall be paid to LESSOR on a daily pro rata basis as set out in paragraph 2, above.

(b) As additional rent, LESSEE shall pay its pro rata portion of any increase in the cost of real property taxes levied upon the KIVA area beyond the cost of said taxes for the year 1972. The KIVA area, for the purposes of the computation of such pro rata portion, shall include the entire area identified as the KIVA on Exhibit 'A' hereto. The computation of LESSEE'S pro rata portion of the taxes shall be made in the following manner:

[Here follows a formula for computing the lessee's share of any increase in taxes on the shopping center, based on the square feet leased, to be computed at the end of each tax year and allocated by the lease year.]

(c) Percentage Rent. In addition to payment of the Base Rent and Real Property Taxes as provided above, LESSEE shall pay to LESSOR, *annually*, the amount, if any, by which 8 percent of the gross sales from LEASED PREMISES *during each lease year* exceeds the aggregate amount of the base rent and the pro rata portion of any increase in Real Property Taxes paid by LESSEE to LESSOR during or attributable to said lease year, *the method of computation and manner and time of payment of said percentage rent being more fully set out hereinafter.*

"5. COMPUTATION OF PERCENTAGE RENT, RECORDS. MANNER OF PAYMENT.

(a) Gross Sales Defined. [Here follows an extensive definition of the "gross sales" upon which percentage rent is to be based.]

(b) Books and Records, Audit. [Here follows a detailed procedure enabling the lessor to verify the lessee's gross sales.]

(c) Lease Year Defined. For all purposes under this lease, the term 'lease year' shall mean each succeeding 12 month's period during the term hereof commencing with the first day of the first month of the lease term hereof.

(d) Monthly Installments of Percentage Rent. LESSEE shall submit to LESSOR, within 10 days after the close of each month during the term hereof, a statement showing the gross receipts for such month. Concurrently therewith, LESSEE shall pay to LESSOR any amount by which 8% (percent) of said gross receipts *for such month* exceeds the aggregate of one month's base rent hereunder and $\frac{1}{12}$ (one-twelfth) of the last increase in LESSEE'S pro rata portion of real property taxes beyond the base year of 1972 of which LESSEE has been notified by LESSOR.

(e) Annual Adjustment of Percentage Rent. Within 60 days after the close of each lease year hereunder, LESSEE shall submit to LESSOR its statement showing the gross receipts *for such lease year.* Concurrently therewith, LESSEE shall pay LESSOR the amount, if any, by which 8% of the gross sales for such lease year exceeds the aggregate of the base rentals, the installments of percentage rent, if any, and the pro rata portion of any increase in real property taxes paid by LESSEE during such lease year. *Provided, however, that if the aggregate of the base rent, the installments of percentage rent and any pro rata tax increases paid by LESSEE during such lease year exceed said percent of such gross sales, LESSOR shall, within 60 days after receipt of LESSEE'S statement showing such gross sales, remit and refund such excess to LESSEE.*" (Emphasis added.)

Defendant's position is based on the last, emphasized, sentence quoted above. This language, it contends, clearly and unambiguously requires a refund to it for any year in which 8% of its gross sales falls below the monthly installments it has paid. We believe such a position is untenable.

Both parties cite cases setting out time-honored rules for construing contracts. Defendant relies on those holding that the court

is not authorized to modify beyond the meaning expressed by the language of the parties. The court, under the guise of construction will not make a new or rewrite an old contract. *Wood v. Hatcher*, 199 Kan. 238, 428 P. 2d 799; *Weiner v. Wilshire Oil Co.*, 192 Kan. 490, 389 P. 2d 803. Plaintiff, while not disputing that rule, emphasizes the equally well accepted maxims that:

"The intent and purpose of a written instrument is not to be determined by considering one isolated sentence or provision thereof but by considering and construing the instrument in its entirety." (*Maltby v. Sumner*, 169 Kan. 417, Syl. ¶ 2, 219 P. 2d 395.)

"In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided. The meaning of a contract should always be ascertained by a consideration of all the pertinent provisions and never be determined by critical analysis of a single or isolated provision." (*Weiner v. Wilshire Oil Co.*, supra, Syl. ¶ 3.)

See also, *Geier v. Eagle-Cherokee Coal Mining Co.*, 181 Kan. 567, 313 P. 2d 731; *Lawrence v. Cooper Independent Theatres*, 177 Kan. 125, 276 P. 2d 350; *In re Estate of Koellen*, 162 Kan. 395, 176 P. 2d 544.

The lease in this case requires no rewriting, but a proper construction of it does require examination of more than the "single or isolated provision" relied on by defendant.

A reading together of sections 4 and 5 leads this court to but one conclusion as to the parties' intention. Section 4, captioned *"RENT,"* fixes the lessee's obligation. Paragraph (*a*) prescribes a "fixed *minimum* rental" for the entire fifteen year term, payable in monthly installments. Paragraph (*b*) obligates the lessee to pay as additional rent its pro rata share of any increase in real estate taxes over the base year. (The obligation is to be determined and is payable annually at the close of each tax [calendar] year after 1972, and the provision has had no opportunity to come into play yet.) Paragraph (*c*) requires the payment of percentage rent "in addition to" the base rent and tax increases, and refers to provisions "set out hereinafter" for the "method of computation and manner of time and payment."

The applicable later provision in section 5, *"COMPUTATION OF PERCENTAGE RENT, RECORDS. MANNER OF PAYMENT."* That section, as its caption indicates, deals wholly with percentage rent. Paragraph (*a*) defines the basis to which the percentage is applied; (*b*) deals with accounting procedures and

audits; (c) defines the lease year to be employed in annualizing the obligation for percentage rent. The critical paragraphs here are (d) and (e).

Paragraph (d) requires the lessee to remit 8% of its gross sales each month, after taking credit for that month's base rent (and for any anticipated tax increase for that month, based on the latest annual tax increase). Our calculations reveal that monthly sales must top $23,940.13 before any monthly percentage rent is due. Paragraph (e) provides for an annual adjustment, made necessary by the requirement of (d) that percentage rent be *remitted monthly*, while the actual rent *obligation* is based on 8% of gross sales *during the lease year*.

Putting aside the "tax increase" provision not presently applicable, it is obvious that if gross sales equalled or were more than $23,940.13 for each month, at the end of the year there would be no adjustment called for because the lessee, in its cumulative monthly payments, would have paid exactly 8% of its *annual* sales. But if sales in any month fell below $23,940.13 while in others it was above, the lessee would have overpaid its annual obligation at the end of the year.

In the actual case, sales for October, 1971, were $24,253.56, and required a percentage rent remittance for that month of $25.07. At the end of the lease year it appeared that sales for the entire year had averaged considerably less than the magic $23,940.13, so that there was in fact no percentage rent owed for that year. Had the lessee paid the $25.07 as the lease required, it would have been entitled to a refund under the language it relies upon.

However, to give that language the broad meaning defendant now ascribes to it would "reduce the terms of the contract to an absurdity." (*Weiner v. Wilshire Oil Co.*, supra.) It would mean simply that the rent obligation under the lease was 8% of gross sales, no matter how small, and regardless of the other terms of the lease. Section 4 (a) prescribing a "fixed minimum rental" for the full term would be meaningless—there would be no minimum rental. Similarly the elaborate provisions in 4 (b) for computing the lessee's pro rata share of tax increases, allocating portions of the tax year to the lease year, and for separate payment of such tax increases as "additional rent" would all be likewise meaningless —if sales didn't meet the magic figure anything paid under these provisions would be refunded. The bulk of the section of the lease

dealing squarely with the lessee's *obligation* to pay rent, as opposed to *manner* of payment, would be mere surplusage.

We have said that "A cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistent with legal principles." (*Hamann v. Crouch,* 211 Kan. 852, 508 P. 2d 968.) In this case we have no difficulty in finding that the parties intended that there should be a "fixed minimum rent," as provided in 4 (*a*), regardless of the lessee's gross sales. The proviso in section 5 (*e*) of the lease establishes a method for adjusting percentage rent only, and was designed to cover a situation where payments of such percentage rent by the month resulted in an overpayment of the annual percentage rent due. Such an adjustment was not intended to reduce the lessee's obligation below the minimum rent (plus tax increases, if any).

There was, therefore, no refund due to the defendant lessee for the first year, and the trial court correctly entered judgment for the plaintiff-lessor.

The judgment is affirmed.

APPROVED BY THE COURT.