Tammy STORTS, Plaintiff,

v.

HARDEE'S FOOD SYSTEMS, INC., Imasco Holdings, Inc., and Imasco, Ltd., Defendants.

Civ. A. No. 95–1036–MLB.

United States District Court, D. Kansas.

March 11, 1996.

Donald A. McKinney, Wichita, KS, for plaintiff.

Paul P. Hasty, Jr., Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for defendants.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter comes before the court for a *de novo* review of the United States Magistrate Judge's recommendation and report sustaining defendants Hardee's and Imasco Holdings' motion to dismiss plaintiff's amended complaint (Doc. 20).[1] The court has reviewed the file and the parties' memoranda (Docs. 22, 23, 24).

### Procedural Facts

Plaintiff filed her complaint February 2, 1995. She alleged, in pertinent part, that on February 5, 1993 she was abducted from the parking lot of the Hardee's restaurant located on the Kansas Turnpike near Wellington, Kansas. She further alleged that the restaurant was negligently designed and operated "... in a manner which violated basic principles of consumer safety and crime prevention ..." and that Hardee's failed to provide proper security and other protections for her safety. Plaintiff contended that her abduction and resulting injuries and damages were the direct result of Hardee's negligence.

---

1. The magistrate judge ruled that plaintiff could file a second amended complaint alleging plaintiff's incapacity and setting forth grounds for tolling the statute of limitations pursuant to K.S.A. 60–515(a). Plaintiff has not done so.

Plaintiff served process on Hardee's by serving C.T. Corporation Systems by certified mail postmarked May 18, 1995 and Imasco Holdings by certified mail received May 30, 1995 (Doc. 5, 6).[2] Plaintiff's reasons for waiting so long to serve defendants are not apparent. In any event, Hardee's filed a motion to dismiss on the ground that plaintiff's claim was barred by the statute of limitations (Docs. 2, 3).

Plaintiff's initial reaction to the motion was to file a first amended complaint (Doc. 4). Three days later, plaintiff filed her response to the motion to dismiss which stated, in substance, that she had abandoned the negligence claims of her original complaint and instead was pursuing a breach of contract claim which was not barred by the statute of limitations (Doc. 8). Hardee's and Imasco Holdings moved for dismissal of the first amended complaint on the ground that her claim still was barred by the statute of limitations (Docs. 9, 10). Plaintiff responded in a lengthy document which purported to discuss not only the contractual issues raised by Hardee's in its motion but also plaintiff's liability and damage theories including plaintiff's psychological condition (Doc. 11). After defendants filed their reply (Doc. 12), this court referred the motion to dismiss to United States Magistrate John Thomas Reid for a recommendation for disposition (Doc. 13). Magistrate Judge Reid's recommendation and report was filed on September 12, 1995 (Doc. 20). Plaintiff now seeks review of every aspect of Judge Reid's ruling.

*Plaintiff's Contentions*

The magistrate judge found that the gist of plaintiff's complaint was grounded in tort, not in contract, and was thus barred by Kansas' two-year statute of limitations, K.S.A. 60–513(a)(4). Plaintiff takes strong exception to this ruling. She argues that her claim is based upon certain specific provisions of the contract between Hardee's and the Turnpike Authority. The provisions upon which plaintiff relies are as follows:

The parties hereto shall bind themselves to the following conditions and covenants:

1. SERVICE: Operator agrees to operate the aforesaid restaurant facilities in an efficient and attractive manner and so to conduct its operations as to make its Kansas Turnpike restaurants models of proper management, both for service to the public and the winning of public esteem for Operator, its services and products, and for the Turnpike as a whole. Food and service shall be of a quality that will attract repeat business. Customers shall never be considered transients. All serving personnel shall be trained by Operator as necessary to obtain this quality of service, with emphasis given to courtesy, service to the patrons, and serving techniques.

\*   \*   \*   \*   \*   \*

8. MAINTENANCE AND REPAIRS: For purposes of maintenance and repair, the leased premises and equipment shall be divided into three general categories: (a) buildings and related equipment, (b) restaurant equipment, and (c) leased premises.

\*   \*   \*   \*   \*   \*

(c) Leased premises: Operator agrees to maintain the leased premises, including the area within the leased limits, in an attractive, clean, **safe,** and sanitary **manner.** Planting of shrubs, cutting of grass, and other landscaping shall be the responsibility of Authority. Authority shall also make, at its expense, all repairs to the parking areas, including resurfacing.

(d) General: Operator shall **correct and remedy any and all unsatisfactory conditions inside or outside of the leased premises** as they may relate to attractiveness, **high quality** of service, efficiency, cleanliness, **safety,** or sanitation, **in a manner befitting the Turnpike** and the facilities afforded. If Operator willfully neglects or refuses to correct or remedy such unsatisfactory conditions, which are herein defined as its responsibility, within twenty (20) days after receiving written notice from Authority to do so, then Authority shall have the right to take action to have the unsatisfactory conditions remedied and to submit a bill to Operator

**2.** The file does not reflect any attempt to serve    defendant Imasco, Ltd.

for the costs of the same. If such conditions persist, and after twenty (20) days have expired from the date of receipt of notice thereof by Operator, then Authority shall have the right to terminate this lease forthwith.

9. HOUSEKEEPING: Operator shall keep the buildings and leased premises in a neat and clean condition at all times.

\* \* \* \* \* \*

Operator shall police the areas outside the building, including entranceways, the patio area, and adjacent sidewalks, which are defined herein as sidewalks running parallel on both sides of the restaurant area, but not including the sidewalk running between the restaurant and the service station.

Authority shall keep the parking areas in a clean and sightly condition at all times, and shall make adequate arrangements for the collection of papers and trash, sweeping, hosing-down, and any other arrangements for general good housekeeping that may be necessary. Operator shall assist in keeping area free of litter to the best of its ability.

\* \* \* \* \* \*

25. TERMINATION:

\* \* \* \* \* \*

If, in the opinion of Authority,

\* \* \* \* \* \*

(d) if the operation of said restaurant becomes such that it is not to the **best interest of the traveling public** and that by reason thereof, the revenue from tolls

accruing to the Authority is adversely affected, or

(e) the Operator does not maintain the properties and keep them in a clean and sightly condition and maintain the **high standard of** attractiveness, high quality of service, efficiency, cleanliness, **safety** and sanitation in a manner befitting the Turnpike and the facilities afforded as provided in Section 9 hereof; and if, in the opinion of Authority, such unsatisfactory conditions have not been completely remedied within twenty (20) days after notice has been received by Operator of such unsatisfactory conditions, then Authority shall have the right to terminate this lease forthwith on giving proper notice to Operator.

(provisions emphasized by plaintiff in bold. Doc. 22 at 4–5, 13).

Plaintiff argues that these contractual provisions impose upon defendants a higher duty than the negligence standard imposed by law, i.e., due care, and that they transcend the general rule that a business owner has no liability for injuries inflicted upon customers by the criminal acts of third parties which are committed in the business' parking lot unless "... circumstances exist from which the owner could reasonably foresee that its customers have a risk of peril above and beyond the ordinary and that appropriate security measures should be taken." *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 548, 856 P.2d 1332 (1993).

Plaintiff concedes that she is not a party to the contract but nevertheless contends she is a third party beneficiary of the "higher duties" allegedly created by the contract.[3]

**3.** Plaintiff cites *Flood v. Wisconsin Real Estate Inv. Trust*, 503 F.Supp. 1157 (D.Kan.1980) (suit by tenant against landlord for breach of express and implied warranties of security); *Noel v. Proud*, 189 Kan. 6, 367 P.2d 61 (1961), (suit by a patient against his physician based upon breach of express warranty) and *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 552 P.2d 885 (1976) (suit by a patient against hospital based upon breach of express contract). But none of these cases mention the concept of third-party beneficiary and are not helpful.

Plaintiff also cites cases from other jurisdictions: *Owens v. Haas*, 601 F.2d 1242, 1250 (2nd Cir.1979) (tentative finding, based upon language of contract between U.S. Bureau of Pris-

ons and state jail, that prisoner's complaint stated third-party beneficiary status sufficient to survive motion to dismiss); *Cherry v. Crow*, 845 F.Supp. 1520, 1523 (M.D.Fla.1994) (based on language of contract between sheriff and health care provider, claim for wrongful death of prisoner allegedly denied medical care stated third-party beneficiary status sufficient to survive motion to dismiss); *Stickle v. City-Wide Security Services, Inc.*, 839 F.Supp. 207, 210 (S.D.N.Y. 1993) (based on language of security services contract, building tenant deemed a third-party beneficiary for purposes of surviving motion for summary judgment); *Nieswand v. Cornell University*, 692 F.Supp. 1464, 1470 (N.D.N.Y.1988) (factual questions surrounding claims of express

Apparently recognizing that the contract language does not specifically confer third party beneficiary status upon her, plaintiff asserts that the contract is ambiguous. Plaintiff contends that she should be able to offer evidence so that a *jury* can decide what is meant by certain terms of the contract and whether defendants owed her a duty (Doc. 24 at 9–14).

### Standard of Review

■■■ The basis of defendants' motion to dismiss was that plaintiff's claim is barred by the statute of limitations. It was not predicated upon plaintiff's failure to state a claim as a third party beneficiary and the magistrate judge's decision was not based on that ground. However, because this matter is before the court *de novo* and because the parties have addressed the matter of plaintiff's third party beneficiary status in their memoranda, the court has elected to treat defendant's motion as one for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Because both parties have cited to it, the court has considered one matter outside the pleadings: the contract. Technically, this requires conversion of the motion to one for summary judgment. *Id.; Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991). Conversion to summary judgment ordinarily requires the court to notify the parties and afford them an opportunity to present evidence. This procedure is not required, however, when the parties have had full opportunity to state their positions. *In re: Harris Pine Mills,* 44 F.3d 1431, 1439–40 (9th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995). The court finds that further evidentiary presentation is not necessary since the court's decision is one of law based upon the written contract. The parties have briefed and rebriefed the contract and third party

and implied contract between student and university sufficient to survive summary judgment; third-party beneficiary not discussed); *Vick v. H.S.I. Management, Inc.,* 507 So.2d 433 (Alab.1987) (tenant's negligence claim against company which had contracted with apartment owner to maintain outdoor lighting sufficient to survive motion for summary judgment; no specific discussion of third-party beneficiary) and *Holley v. St. Paul Fire & Marine Ins. Co.,* 396

beneficiary issues and no further briefing will be helpful.

### Applicable Law

In *First National Bancshares of Beloit, Inc. v. Geisel,* 853 F.Supp. 1337 (D.Kan. 1994), Judge Saffels of this court summarized Kansas law pertaining to third party beneficiaries:

Recent Kansas caselaw analyzing the law of third-party contract beneficiaries divides them into the general classes of intended beneficiaries and incidental beneficiaries. *Noller v. GMC Truck and Coach Div.,* 244 Kan. 612, 772 P.2d 271, 275 (1989) (citing *Fasse v. Lower Heating and Air Conditioning, Inc.,* 241 Kan. 387, 736 P.2d 930 (1987)). A beneficiary may sue to enforce a contract made by others only if he is an intended beneficiary, *i.e.,* one who the contracting parties intended should receive a direct benefit from the contract. *Id.,* 772 P.2d at 275; *Martin v. Edwards,* 219 Kan. 466, 548 P.2d 779, 785 (1976).

The determination of the contracting parties' intent as to the rights of a third party beneficiary is a question of contract construction for the court, and the general rules of contract construction apply. *Id.* The meaning of the contract and the intent of the parties are to be deduced by the court from the instrument itself, as long as its terms are plain and unambiguous. *Cornwell v. Jespersen,* 238 Kan. 110, 708 P.2d 515, 521 (1985); *Martin v. Edwards,* 548 P.2d at 785–86. . . .

Contracting parties are presumed to act for themselves. *Id.* at 785; *Ronnau v. Caravan Intern. Corp.,* 205 Kan. 154, 468 P.2d 118, 122 (1970). Therefore the parties' intent to benefit a third person must be clearly expressed in the contract. *Id.; see Fasse v. Lower Heating and Air Conditioning,* 736 P.2d at 932; *Martin v. Ed-*

So.2d 75 (Ala.1981) (hospital visitor may be third-party beneficiary of maintenance contract).

The court has read and considered these cases. The court declines to discuss the cases in detail but rather simply observes that the cases are factually distinguishable and, in any event, nonbinding precedent. The court is satisfied that sufficient Tenth Circuit and Kansas law supports its decision.

*wards,* 548 P.2d at 785; *see also United States v. United Services Automobile Ass'n,* 968 F.2d 1000, 1001–02 (10th Cir. 1992) (applying Kansas law). It is not necessary, however, for the third party to be the exclusive beneficiary of the contract; it may benefit the contracting parties as well. *Fasse,* 736 P.2d at 932; *Martin,* 548 P.2d at 785. Nor is it necessary for the third party beneficiary to be personally named in the contract, if he is a member of a designated class or otherwise identifiable as a person intended by the parties' language to benefit from the contract. *Hartford Fire Ins. Co. v. Western Fire Ins. Co.,* 226 Kan. 197, 597 P.2d 622, 632 (1979). However, the third party must show the existence of a provision in the contract that operates to his benefit. *Id.; see United States Automobile Ass'n,* 968 F.2d at 1002.

*First Nat. Bancshares,* 853 F.Supp. at 1340–41.

Chief Judge Van Bebber made additional pertinent observations in *Sinclair Oil Corp. v. Sylvan State Bank,* 894 F.Supp. 1470, 1478 (D.Kan.1995):

In order for a third party to enforce a contract entered into between two other parties, the third party must show that the contract was entered into for his benefit. *Cornwell v. Jespersen,* 238 Kan. 110, 115, 708 P.2d 515, 520 (1985). "[A] beneficiary can enforce the contract if he is one who the contracting parties intended should receive a direct benefit from the contract." *Id.* "Contracting parties are presumed to act for themselves and therefore an intent to benefit a third person must be clearly expressed in the contract." *Id.* at 115–16, 708 P.2d 515. An "incidental beneficiary" cannot enforce a contract as a third party beneficiary. A person is an incidental beneficiary if the benefits accruing to him are merely incidental to the performance of the contract. *Id.*

Additional general rules of contract construction are set out in *Central Kansas Credit Union v. Mutual Guar. Corp.,* 886 F.Supp. 1529, 1537 (D.Kan.1995):

"To be ambiguous, a contract must contain provisions or language of doubtful or con-flicting meaning, as gleaned from a natural or reasonable interpretation of its language." *Patrons Mut. Ins. Ass'n v. Harmon,* 240 Kan. 707, 713, 732 P.2d 741 (1987). An ambiguity does not exist unless the application of the rules of interpretation leaves it genuinely uncertain which one of two or more possible meanings is the proper one. *Wood River Pipeline,* [*v. Willbros Energy*], 241 Kan. [580] at 582, 738 P.2d 866 [ [ (1987) ] ]. There are several relevant rules of interpretation. Beginning with the most basic, terms are given their plain, general, and common meaning. *Wood River Pipeline,* 241 Kan. at 586, 738 P.2d 866. Language used anywhere in the instrument is considered and construed in harmony with other provisions. *Heyen,* 235 Kan. at 122, 679 P.2d 1152. The meaning of a contract should not be assessed from only analyzing a single or isolated provision. *Garvey Center, Inc. v. Food Specialties, Inc.,* 214 Kan. 224, 227, 519 P.2d 646 (1974). If a contract includes a series of writings, all writings that are part of the same transaction are interpreted together. *Burge v. Frey,* 545 F.Supp. 1160, 1169 (D.Kan.1982). Reasonable interpretations, rather than unreasonable ones, are favored by the law. *Seacat v. Mesa Petroleum Co.,* 561 F.Supp. 98, 105 (D.Kan.1983). Interpretations which vitiate the contract's purpose or reduce its terms to an absurdity should be avoided. *First Nat'l Bank of Olathe v. Clark,* 226 Kan. 619, 624, 602 P.2d 1299 (1979). Under the guise of contract construction, the court must not rewrite or insert terms. *Garvey Center, Inc.,* 214 Kan. at 227, 519 P.2d 646.

Courts must not rewrite a contract to achieve an equitable result under the guise of contract construction. *Galindo v. City of Coffeyville,* 256 Kan. 455, 466, 885 P.2d 1246 (1994). A contract is not ambiguous merely because it does not address an issue. *TMG Life Ins. Co. v. Ashner,* 21 Kan.App.2d 234, 242, 898 P.2d 1145 (1995). Finally, as plaintiff herself points out, contracting parties are presumed to contract in reference to existing law and are presumed to have in mind all existing law relating for the contract. *Steele*

*v. Latimer*, 214 Kan. 329, 336, 521 P.2d 304 (1974) (Doc. 24 at 7).

## Discussion

■ The parties are familiar with the rules applicable to summary judgment. Basically, the court's initial obligation is to determine whether a disputed issue of material fact exists which requires a trial. If no such issue is found to exist, the court may decide the case on legal issues.

The following facts are not in dispute: (1) plaintiff was abducted from Hardee's parking lot; (2) at the time of her abduction, Hardee's had a written contract with the Kansas Turnpike Authority, portions of which have been set out, *supra;* (3) plaintiff was not a party to the contract; (4) plaintiff claims to be a third party beneficiary under the contract (Doc 4 at ¶ 11); and (5) defendants deny that the contract confers such status upon plaintiff.

■ Viewed in the context of summary judgment, plaintiff seeks to create a factual dispute by contending that the contract is ambiguous. She argues that she should be allowed to present expert testimony and portions of a book authored by a Hardee's employee which discusses such topics as unsafe conditions, security risks and standards of safety, all for the purpose of demonstrating ambiguity (Doc. 22 at 5; Doc. 24 at 13–14).

Plaintiff's position is untenable because it essentially ignores the rules regarding determination of third party beneficiary status and contract construction. Plaintiff's status as a third party beneficiary is determined by construction of the contract, which is a question of law, not fact. Extrinsic evidence, such as that proposed by plaintiff, is not admissible as an aid to construction. It is admissible *only* if the court finds the contract ambiguous. *Lyon Development Co. v. Business Men's Assurance Company of America*, 76 F.3d 1118 (10th Cir.1996).

■ The contract is a lease agreement for the operation of Hardee's restaurants at rest areas on the Kansas Turnpike. Substantial portions of the contract are devoted to matters such as the term of the lease, rental payments, food and prices, signs, insurance

and termination of the lease. The provisions cited by plaintiff appear primarily in the section entitled Maintenance and Repairs. The overall thrust of this section concerns the physical condition of the property. While customers who use the restaurants arguably benefit from proper maintenance of the property, their status is not comparable, for example, to jail inmates whose care and control is the subject of a jail maintenance contract. Clearly, viewed in the context of the contract as a whole, restaurant customers such as plaintiff are incidental beneficiaries, at best.

Plaintiff's position basically ignores the contract as a whole and instead focuses upon isolated provisions and isolated words or phrases in those provisions. She then argues that these isolated portions make the contract ambiguous, not from the perspective of what the parties intended, but rather from what "reasonable minds" could view the words to mean. Her approach seems to be that she should be allowed to introduce extrinsic evidence regarding matters the parties *should* have considered (building design, adequacy of windows, visibility and natural surveillance) instead of what they *did* consider in drafting the contract. This does not demonstrate ambiguity.

Perhaps most important, plaintiff ignores her own point: that parties to a contract are presumed to know and have in mind existing law and draft the contract accordingly. The contract in question was made in 1982 when the law of Kansas was (and is) that a business owner's liability for an assault on a patron by a third party is limited in the manner stated in *Seibert v. Regnier, supra.* Plaintiff's entire case is predicated on the existence of contractual duties which exceed those required by law. It would be an illogical or absurd interpretation of the contract for the court to find that the parties intended to create contractual duties which substantially exceeded those required by existing Kansas law unless the contract specifically so states. To do so would amount to rewriting the contract to achieve an equitable result, something the court cannot and will not do.

Accordingly, the court finds as a matter of law that the contract is not ambiguous and

that the parties did not intend to create safety or "security" obligations in favor of Hardee's patrons which exceeded those under existing Kansas law. Since plaintiff's third party beneficiary claim depends upon existence in the contract of such extraordinary obligations, her claim must fail.

In summary, defendants' motion to dismiss plaintiff's third party beneficiary claim is converted to a motion for summary judgment and is sustained. This ruling does not amount to a final order, however. Plaintiff is granted 10 days from the filing of this order to file the second amended complaint referred to in Magistrate Judge Reid's order and footnote 1, *supra.* If no such complaint is filed, the clerk shall enter final judgment for defendants.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 5 pages and shall strictly comply with D.Kan. Rule 7.3 and the standards enunciated by this court in *Comeau v. Rupp,* 810 F.Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 5 pages. No reply shall be filed.

IT IS SO ORDERED.

## RECOMMENDATION AND REPORT

REID, United States Magistrate Judge.

Plaintiff filed her initial complaint in this case on February 2, 1995 (Doc. 1). Plaintiff's injuries, which are the subject of this lawsuit, occurred on February 5, 1993. The initial complaint alleges that defendants were negligent in failing to provide proper security, resulting in injury and damages to the plaintiff. In response, defendants filed a motion to dismiss on June 1, 1995, claiming that plaintiff's negligence claims were barred by a two year statute of limitations (K.S.A. 60–513) (Doc. 2–3). On June 6, 1995, plaintiff filed her first amended complaint (Doc. 4). The first amended complaint, for the first time, brings a claim as an intended third-party beneficiary of the contract between the defendants and the Kansas Turnpike Authority. Plaintiff now claims that the contract was breached because of defendant's failure to provide proper security. Plaintiff asserts that her amended complaint contains no

cause of action for negligence and seeks recovery solely on a contract claim (Doc. 8).

In response, defendants filed a motion to dismiss the first amended complaint on June 28, 1995 (Doc. 9–10). Plaintiff responded on July 19, 1995 (Doc. 11). A reply brief was filed on August 2, 1995 (Doc. 12). These matters have been referred to this court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

The issue raised by the second motion to dismiss is whether the first amended complaint brings a contractual or a tort claim. If it brings a contractual claim, it is not contested that the statute of limitations has not yet run on this claim (K.S.A. 60–511). However, if it brings a negligence claim, then it appears that the two year statute of limitations may have run on such a cause of action.

The nature of a claim, whether it sounds in tort or contract, is determined from the pleadings and from the real nature and substance of the facts therein alleged. *Malone v. University of Kansas Medical Center,* 220 Kan. 371, 374, 552 P.2d 885 (1976). The difference between a tort and a contract action is that a breach of contract is a failure of performance of a duty arising or imposed by agreement. A tort is a violation of a duty imposed by law. *Clark v. Associates Commercial Corp.,* 149 F.R.D. 629, 636 (D.Kan. 1993).

> When elements of both contract and tort are present, the key difference is whether the contract calls for a specific result. When the contract does not call for the specific result at issue, the action is more in the nature of a violation of a duty imposed by law instead of failure to perform a duty arising by reason of agreement. In such a case, the plaintiff's complaint is not that the defendant failed to perform the contract, but that the defendant failed to perform it with due care.

*Id.,* (quoting *Hunt v. KMG Main Hurdman,* 17 Kan.App.2d 418, 839 P.2d 45, syl. ¶ 4 (1992). In *Hunt,* the court further noted that the court must itself decide from the facts pleaded whether the gist or gravamen of the cause of action is in tort or contract. The court then quoted language from Pros-

ser, *The Law of Torts*, § 92, pp. 621–22 [4th ed. 1971], which states that when the claim is one for personal injury, the decision usually has been that the gravamen of the action is the misconduct and the damage, and that it is essentially one of tort, which the plaintiff cannot alter by their pleading. *Hunt*, 17 Kan.App.2d at 420–21, 839 P.2d 45.[1] The general rule is that a plaintiff will not be permitted to characterize a tort action as one in contract in order to avoid the bar of the statute of limitations or governmental immunity. *Malone*, 220 Kan. at 376, 552 P.2d 885.

In Kansas, the owner of a business is not the insurer of the safety of its patrons or customers. The owner ordinarily has no liability for injuries inflicted upon patrons or customers by the criminal acts of third parties in the business' parking lot, as the owner has no duty to provide security. Such a duty may arise, however, where circumstances exist from which the owner could reasonably foresee that its customers have a risk of peril above and beyond the ordinary and that appropriate security measures should be taken. *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 548, 856 P.2d 1332 (1993).

It is therefore clear that there is a duty imposed by law for businesses to provide security in some circumstances. By contrast, a review of the contract between the KTA (Kansas Turnpike Authority) and Hardees makes absolutely no reference to security. The language of the contract relied on by plaintiff is the following:

Section 8, (d) General: Operator [Hardees] shall correct and remedy any and all unsatisfactory conditions inside or outside of the leased premises as they may relate to attractiveness, high quality of service, efficiency, cleanliness, safety, or sanitation, in a manner befitting the Turnpike and the facilities afforded. [p. 12 of contract]

Section 25 TERMINATION: ... or (e) The Operator does not maintain the properties and keep them in a clean and sightly condition and maintain the high standard of attractiveness, high quality of service, efficiency, cleanliness, safety and sanitation in a manner benefitting the Turnpike and

the facilities afforded as provided in Section 9.... (Note: Section 9 is entitled HOUSEKEEPING and makes no reference to security). [p. 23 of contract]

The contract in question in this case does not expressly address the issue of security. It does not specifically set forth any requirements for security. The gist or gravamen of plaintiff's action is that defendants failed to provide proper security. The complaint alleges that defendants specifically failed to allow for natural surveillance, had no security or electronic surveillance, and failed to conduct adequate research and crime analyses of the area to determine proper security measures. None of these complaints are expressly or specifically addressed in the contract; however, they clearly implicate the duty imposed by law as set forth in *Seibert*. In addition, this claim is one for personal injury. In such instances, the gravamen of those actions has generally been found to be one in tort. Finally, the court would note that plaintiff did not attempt to assert a contract claim until defendant sought to dismiss the tort action because of the statute of limitations. As the court noted above, plaintiff cannot attempt to characterize their action as a contract action in order to avoid the statute of limitations on a tort action. For these reasons, the court finds that the gist or gravamen of the cause of action is in tort, not contract. Therefore, the governing statute of limitations is K.S.A. 60–513(a)(4), which allows two years for a tort action to be brought. *Hunt*, 17 Kan.App.2d at 419, 839 P.2d 45.

The next issue for the court to address is whether the cause of action is barred by the statute of limitations. As previously noted, the plaintiff's injuries, which are the subject of this lawsuit, were incurred on February 5, 1993. She filed her lawsuit on February 2, 1995. K.S.A. 60–203(a) provides as follows:

A civil action is commenced at the time of: (1) Filing a petition with the clerk of the court, is service of process is obtained or the first publication is made for service by publication within 90 days after the petition is filed, except that the court may

---

**1.** The language from Prosser was previously quoted in *Tamarac Development Co., Inc. v. Dela-*

*mater, Freund & Associates, P.A.*, 234 Kan. 618, 619, 675 P.2d 361 (1984).

extend that time an additional 30 days upon a showing of good cause by the plaintiff;

It is not disputed that service of process was obtained on the defendant on May 19, 1995. Service was thus obtained 106 days after the filing of the lawsuit. Since service was obtained beyond the 90 days after the filing of the complaint, and a 30 day extension was not sought in this case, plaintiff's complaint was commenced after the statute of limitations had expired.

Plaintiff's response to the clear language of the Kansas statute is to argue that the Kansas statute allows 120 days for service when good cause exists, and that the requirement that the 30 day extension be sought before the initial 90 days expires is a procedural, not a substantive rule, and is therefore not binding on a federal court. Plaintiff takes the position that so long as plaintiff had good cause for the additional 30 days, it is not necessary to seek the 30 day extension prior to the expiration of the initial 90 days allowed under K.S.A. 60-203(a).

In the case of *Read v. Miller,* 247 Kan. 557, 564, 802 P.2d 528 (1990), the court held that an extension of time under K.S.A. 60-203(a) must be sought and granted before the expiration of the 90-day period. In deciding whether a state rule is substantive or procedural, federal courts are governed by the requirement that a federal court cannot give the cause of action a longer life in federal court than it would have had if the case had been filed in state court. *Elliott v. White, O'Connor & Werner, P.A.,* 750 F.Supp. 451, 453 (D.Kan.1990). A plaintiff should not be allowed to proceed in federal court with a lawsuit which would be barred in state court. *Saraniero v. Safeway Inc.,* 540 F.Supp. 749, 752 (D.Kan.1982). Therefore, to determine the commencement date of plaintiff's present cause of action, for the purposes of the statute of limitations defense, we must look to Kansas law. *Elliott,* 750 F.Supp. at 453. The requirement under state law that the 30 day extension be sought prior to the expiration of the 90 days is

therefore applicable in federal court as well. *Burnett v. Perry Manufacturing, Inc.,* 1994 WL 116323 at *4 n. 394080097 (D.Kan. March 15, 1994); *Hollowell v. Bland,* 1993 WL 58283 at *1 (D.Kan. Feb. 3, 1993); *Clark v. Browning and Olin Corp.,* 1992 WL 24103 at *3 n. 2 (D.Kan. Jan. 29, 1992). Plaintiff's claim was therefore filed after the expiration of the statute of limitations.

The final argument that plaintiff asserts is that she is or was an incapacitated person. K.S.A. 60-515(a) provides that if a person is incapacitated when the cause of action accrued or at any time during the period the statute of limitations is running, that person is entitled to bring such action within one year after the person's disability has been removed. Based on this statute, plaintiff asserts that the cause of action has not run.

Under Kansas law, a party seeking to raise the tolling provisions provided by K.S.A. 60-515 must assert the facts justifying its application in their complaint. Where the injured party does not assert legal incapacity as a cause for delay in commencing an action in court, such injured party stands in the position of a person possessing the attributes of a person with legal capacity, when confronted with the two-year statute of limitations in a negligence action. *Gardner v. Toyota Motor Sales, U.S.A., Inc.,* 793 F.Supp. 287, 289-90 (D.Kan.1992).

The first amended complaint does not allege that the plaintiff was incapacitated at any period after the injury in question. However, the affidavit of Dr. Eugene Reynolds, a clinical psychologist, states that the plaintiff is incapacitated. Therefore, the court will permit the plaintiff to file a second amended complaint, setting forth grounds for tolling the statute of limitations pursuant to K.S.A. 60-515(a). Such an amended complaint should be sufficient to toll the statute of limitations and permit the negligence action to go forward.[2]

IT IS THEREFORE RECOMMENDED that the motions to dismiss (Doc. 2, 9) be denied on the condition that plaintiff file a

---

2. In considering a motion to dismiss for failure to state a claim, the court should assume all facts alleged in the complaint are true and should indulge all reasonable inferences in favor of the plaintiffs. *Weatherhead v. Globe International,*

*Inc.,* 832 F.2d 1226, 1228 (10th Cir.1987). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

second amended complaint asserting incapacitation pursuant to K.S.A. 60–515(a). However, plaintiff will not be permitted to maintain a claim for breach of contract.

IT IS FURTHER ORDERED that plaintiff's request for oral argument (Doc. 14) is denied.

IT IS FURTHER ORDERED that plaintiff's motion to set a scheduling conference (Doc. 17–18) is denied without prejudice. Upon the ruling on the above recommendation by the district court judge, plaintiff's counsel may contact the court for the setting of a scheduling conference.

IT IS FURTHER ORDERED that the motion to stay (Doc. 15–16) is denied. *See* *Wolf v. United States*, 157 F.R.D. 494, 495 (D.Kan.1994).

Copies of this recommendation shall be mailed to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1)(B), the parties may serve and file written objections to the recommendation within 10 days after being served with a copy of this recommendation.

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Monument Builders of Greater Kansas City, Inc. v. American Cemetery Assn. of Kansas*, 891 F.2d 1473, 1480 (10th Cir.1989), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 498 (1990); *Weatherhead v. Globe International, Inc.*, 832 F.2d at 1228. The court cannot dismiss a complaint merely because it doubts that the plaintiff can prove the facts it alleges. Thus, a motion to dismiss can only be granted if plaintiff has failed to allege sufficient facts to entitle it to relief if the facts alleged are taken as true. *Mundell v. Beverly Enterprises–Indiana, Inc.*, 778 F.Supp. 459, 460 (S.D.Ind.1991).