**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 6 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TAMMY STORTS,

      Plaintiff - Appellee,

v.

HARDEE'S FOOD SYSTEMS, INC.,
a foreign corporation licensed to do
business in Kansas,

      Defendant - Appellant.

No. 98-3285
(D.C. No. 95-CV-1036-MLB)
(District of Kansas)

TAMMY STORTS,

      Plaintiff - Appellant,

v.

HARDEE'S FOOD SYSTEMS, INC.,
a foreign corporation licensed to do
business in Kansas,

      Defendant - Appellee.

No. 98-3320
(D.C. No. 95-CV-1036-MLB)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **BALDOCK**, **BRORBY** and **LUCERO**, Circuit Judges.

In this diversity action, defendant Hardee's Food Systems, Inc. ("Hardee's") appeals from a jury verdict in favor of plaintiff Tammy Storts for injuries she suffered as a result of her abduction from a Hardee's parking lot. Hardee's' primary contentions are that the district court's instructions on the duty to provide security and the duty to warn of a dangerous condition, and the verdict finding negligence, were not supported by the evidence. Hardee's also contends that the instructions misstated the law, the suit is barred by the statute of limitations, and the district court erroneously admitted expert testimony. On cross-appeal, Storts argues the district court erred when it dismissed two of her theories of liability—undertaking of duty and breach of contract—and instructed the jury on comparative negligence. We conclude that although the evidence is sufficient to establish the existence and breach of the duty to provide security, it does not support an instruction on the duty to warn of a dangerous condition. This error requires reversal because it is impossible to determine from the general verdict whether the jury relied on the improperly submitted duty to warn theory of negligence. The remaining claims of error are without merit. We also deny Hardee's' motion to certify various questions to the Kansas Supreme Court. We

exercise jurisdiction pursuant to 28 U.S.C. § 1332 and reverse and remand for a new trial.

## I

On February 5, 1993, Tammy Storts pulled off the Kansas Turnpike into the Belle Plaines service area, where she parked her van and entered a restaurant managed, owned, and operated by Hardee's. After using the restroom, calling work, and purchasing a soda, she exited the restaurant. Walking towards her van, she noticed two men standing next to the trunk of a car backed into the adjacent parking space, and a third man in the driver's seat of the car. As she started to get into her van, someone grabbed her purse and then threw her into the trunk of the car. Her abductors drove off, eventually exiting the turnpike and parking in a field. There, they removed Storts from the trunk, stole her jewelry, and raped and sodomized her. One of her assailants also put the barrel of a pistol into her mouth.

Storts did not report the incident to the authorities until May 1993. On June 27, 1994, she was admitted to St. John's Medical Center in Tulsa, Oklahoma because she had overdosed on drugs and alcohol and was suffering from depression. Storts had been unconscious or unresponsive for thirty hours prior to her admission and remained lethargic and experienced hallucinations for much of her six-day stay at the hospital.

Storts filed the instant suit on February 2, 1995, but did not serve Hardee's until May 19, 1995. In her complaint, Storts alleged that Hardee's had "negligently failed to provide proper security, in the form of visibility and natural surveillance, to protect plaintiff, a customer and business invitee of Hardee's." (I Appellant's App. at 4.) In response to Hardee's' motion to dismiss on statute of limitations grounds, Storts submitted a first amended complaint that dropped the negligence claim and alleged instead that the lack of proper security constituted a breach of a contract between Hardee's and the Kansas Turnpike Authority ("KTA"), of which she was an intended third party beneficiary. The district court found that Storts's contract claim failed as a matter of law, but granted leave to file a second amended complaint based on her allegations of temporary incapacitation. See Storts v. Hardee's Food Sys., Inc., 919 F. Supp. 1513, 1522-23 (D. Kan. 1996). Storts accepted that invitation, and in her second amended complaint reasserted her negligence claim. Both parties then moved for summary judgment on the statute of limitations issue. The district court ruled in favor of Storts, finding that the limitations period had been tolled pursuant to Kan. Stat. Ann. § 60-515 because of her June 1994 hospitalization. In a separate memorandum and order, the district court denied Hardee's' motion for summary judgment on the issue of its duty to provide security measures as well as on a

motion in limine to exclude the testimony of various experts, but granted summary judgment in favor of Hardee's as to Storts's undertaking of duty theory.

The case was tried to a jury, which found Hardee's 70% at fault pursuant to a comparative negligence instruction and calculated total damages of $200,000. The court entered judgment against Hardee's for $140,000 and denied Hardee's' motions for judgment as a matter of law and a new trial.

Both parties appeal this judgment. Hardee's argues that Storts's claim is barred by the statute of limitations, it owed no duty as a matter of law to provide increased security, the jury instructions regarding duty were erroneous, and the court erred in admitting the testimony of several experts. Storts asserts that the court erred in instructing the jury on contributory negligence and in dismissing its contract and undertaking of duty claims.

## II

We first address Hardee's' various arguments regarding the Kansas statute of limitations.

## A

State law establishes the limitations period and tolling procedures for this federal diversity action. See Habermehl v. Potter, 153 F.3d 1137, 1139 (10th Cir. 1998). Under Kansas law, a negligence action must be commenced within two years of the date the cause of action accrues. See Kan. Stat. Ann. §§ 60-510, 60-

513(a)(4). A civil action is deemed commenced on the date the complaint is filed, provided service of process is obtained within ninety days of the date of filing. See Kan. Stat. Ann. § 60-203(a)(1). If service is not obtained within the ninety-day period, the action is deemed commenced on the date service is obtained. See Kan. Stat. Ann. § 60-203(a)(2). Storts was injured, and therefore her action accrued, on February 5, 1993. While she filed the instant action on February 2, 1995, within the two-year limitations period, she did not obtain service on Hardee's until May 19, 1995, more than ninety days later. Therefore, the action is deemed commenced on May 19, 1995, outside the two-year limitations period.

State law also provides, however, that if at any time during the period the statute of limitations is running the person entitled to bring an action is "incapacitated [,]. . . such person shall be entitled to bring such action within one year after the person's disability is removed." Kan. Stat. Ann. § 60-515(a). An incapacitated person has been defined as "'any adult person whose ability to receive and evaluate information effectively or to communicate decisions, or both, is impaired to such an extent that the person lacks the capacity to manage such person's financial resources . . . or to meet essential requirements for such person's physical health or safety, or both.'" Biritz v. Williams, 942 P.2d 25, 28-29 (Kan. 1997) (quoting Kan. Stat. Ann. § 59-3002, which defines "disabled persons"). Adopting the magistrate's report and recommendation, the district

court found Storts was unable to meet the essential requirements of her personal health and safety, and therefore "incapacitated," Kan. Stat. Ann. § 60-515(a), during her hospitalization from June 27 until July 2, 1994. Because Storts commenced her claim on May 19, 1995, less than one year from July 2, 1994, the district court held her claim was not time-barred as a matter of law.

Hardee's argues the district court's holding was incorrect because "[i]ntentional, short-term, self-induced 'incapacitations' [such as a drug and alcohol overdose] were not intended by the Kansas Legislature to extend the statute of limitations." (Appellant's Br. at 30). This argument is foreclosed by the Kansas Supreme Court's decision in Biritz, 942 P.2d at 29-30. In that case, the defendant argued the plaintiff was not incapacitated within the meaning of § 60-515 because he had voluntarily taken the pain medication which had rendered him incapacitated and his incapacitation lasted only forty-eight hours. See id. The court rejected these arguments, holding that "[t]he statute tolls the statute of limitations for any person who is incapacitated at the time the cause of action accrues or at any time during the period the statute of limitations is running . . . . The statute is not ambiguous and clearly applies to any disability." Id. at 30 (emphasis in original). We agree with the district court that § 60-515, as interpreted by Biritz, applies to all incapacitated persons irrespective of their cause of the disability. As for duration, while it might be less likely that someone

who is disabled for only a brief time would meet the definition of incapacity adopted by Biritz, 942 P.2d at 28-29, the undisputed evidence is more than sufficient to support the district court's finding that Storts was unable to meet the essential requirements of her health and safety. Therefore, summary judgment in favor of Storts on the question of the application of the statute of limitations was proper.

**B**

Hardee's has submitted to this court a motion to certify to the Kansas Supreme Court the question of whether an incapacitation induced by voluntary actions can toll the statute of limitations pursuant to § 60-515. The district court denied a similar motion. While it should be apparent from the preceding discussion that Biritz settles this issue, we pause to set forth in some detail the standard for certification because Hardee's has requested certification of several issues addressed in this opinion.

The rule of this court provides that "[w]hen state law permits, this court may: (1) certify a question arising under state law to that state's highest court according to that court's rules; and (2) stay the case in this court to await the state court's decision of the certified question." 10th Cir. R. 27.1(A). State law permits the Kansas Supreme Court to

> answer questions of law certified to it by . . . a court of appeals of
> the United States [or] a United States district court . . . , when

requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

Kan. Stat. Ann. § 60-3201. While certification is appropriate "where the legal question at issue is novel and the applicable state law is unsettled," Allstate Ins. Co. v. Brown, 920 F.2d 664, 667 (10th Cir. 1990), it is never compelled, see Lehman Brothers v. Schein, 416 U.S. 386, 390-91 (1974). Furthermore, "under the diversity statutes the federal courts have the duty to decide questions of state law even if difficult or uncertain." Copier v. Smith & Wesson Corp., 138 F.3d 833, 838 (10th Cir. 1998) (citing Meredith v. Winter Haven, 320 U.S. 228, 235 (1943)). Finally, "[w]e generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court." Massengale v. Oklahoma Bd. of Med. Exam'rs in Optometry, 30 F.3d 1325, 1331 (10th Cir. 1994) (citing Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir. 1988)); see also Harvey E. Yates Co. v. Powell, 98 F.3d 1222, 1229 n.6 (10th Cir. 1996) (denying a motion for certification because the moving party had removed the case to federal court, had not moved for certification below, and had received an adverse ruling).

In light of <u>Biritz</u>, the issue of voluntary incapacitation is neither novel nor unsettled. <u>See</u> 10th Cir. R. 27.1(A). Therefore, we deny Hardee's' motion for certification of that issue.

**III**

The district court denied Hardee's' motion for judgment as a matter of law, relying on its findings at the summary judgment stage that the evidence was sufficient to establish that Hardee's owed and breached a duty to provide security measures for Storts's safety. We review de novo the district court's denial of a motion for judgment as a matter of law. <u>See</u> <u>Vining v. Enterprise Fin. Group, Inc.</u>, 148 F.3d 1206, 1213 (10th Cir. 1998). Construing all evidence and the inferences therefrom in the light most favorable to the non-moving party, we will reverse such a ruling "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." <u>Id.</u> (citing <u>Haines v. Fisher</u>, 82 F.3d 1503, 1510 (10th Cir. 1996)).[1]

---

[1] Hardee's also asserts that it was error for the district court to deny its motion for summary judgment on the question of duty to provide security. We need not address this argument. "Even if . . . summary judgment was erroneously denied, 'the proper redress would not be through appeal of that denial but through subsequent motions for judgment as a matter of law . . . and appellate review of those motions if they were denied.'" <u>Medlock v. Ortho Biotech, Inc.</u>, 164 F.3d 545, 549 n.1 (10th Cir. 1999) (quoting <u>Roberts v. Roadway Express, Inc.</u>, 149 F.3d 1098, 1103 (10th Cir. 1998)).

**A**

The Kansas Supreme Court established the standards for determining when

the owner of a business has a duty to provide security for its patrons in Seibert v.

Vic Regnier Builders, Inc., 856 P.2d 1332 (Kan. 1993), a premises liability action

arising out of an assault in a shopping center parking lot.

> In determining whether there is a duty owed, we start with two
> general rules.  The owner of a business is not the insurer of the safety
> of its patrons or customers.  The owner ordinarily has no liability for
> injuries inflicted upon patrons or customers by the criminal acts of
> third parties in the business' parking lot, as the owner has no duty to
> provide security.  Such a duty may arise, however, where
> circumstances exist from which the owner could reasonably foresee
> that its customers have a risk of peril above and beyond the ordinary
> and that appropriate security measures should be taken.

Id. at 1338.  Whether a risk of peril above and beyond the ordinary is reasonably

foreseeable is determined based on the "totality of the circumstances." Id. at

1339.  The circumstances to be considered must "have a direct relationship to the

harm incurred" and "must relate specifically to the foreseeability of the attack on

the plaintiff." Id. at 1339, 1340.  "Prior incidents remain perhaps the most

significant factor, but the precise area of the parking lot is not the only area which

must be considered.  If the parking lot is located in a known high crime area, that

factor should be considered." Id. at 1339.  Seibert's discussion of 62A Am. Jur.

2d, Premises Liability § 520, suggests that the "place and character of the

business [and the business owner's] past experience" are additional circumstances

that can be considered.  Id. at 1336 (citing Restatement (Second) of Torts § 344 (1965)).

> [T]he duty to provide security and the level of such security must be reasonable—that includes the economic feasibility of the level of security. . . . [I]f because of the totality of the circumstances the owner has a duty to take security precautions by virtue of the foreseeability of criminal conduct, such security measures must also be reasonable under the totality of the circumstances.

Id. at 1339-1340.

In general, the determination of duty is a matter of law.  See Nero v. Kansas State Univ., 861 P.2d 768, 772 (Kan. 1993).  At the same time, "'[w]hether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact.  Only when reasonable persons could arrive at but one conclusion may the court determine the question as a matter of law.'"  Id. at 779 (quoting Kansas State Bank & Tr. Co. v. Specialized Transp. Servs., Inc., 819 P.2d 587 (Kan. 1991)).  Seibert imposes on Hardee's a duty to provide reasonable and appropriate security if it is reasonably foreseeable, based on the totality of the circumstances, that "its customers have a risk of peril above and beyond the ordinary."  Seibert, 856 P.2d at 1338.  Because Hardee's' fundamental argument is that the attack on Storts was not foreseeable, we will reverse only if that is the sole conclusion a reasonable juror could reach.

**B**

As a preliminary matter, Hardee's moves this court to certify to the Kansas Supreme Court two questions related to a business owner's duty to provide security. The first is "whether Kansas' 'totality of the circumstances test' rule should be abandoned in favor of the 'prior similar incidents test' or modified to clarify the requisite degree of foreseeability . . . ." (Appellant's Mot. for Certification at 2.) That question is entirely inappropriate for certification. In Seibert, the Kansas Supreme Court expressly rejected the prior similar incidents test in favor of the totality of the circumstances test. Seibert, 856 P.2d at 1338-39. The purpose of certification is to permit the state court to resolve novel and unsettled questions of state law, not to abandon or modify settled law.

The second question posed is whether the totality of the circumstances can include prior criminal attacks that occurred in an area as widespread as the entire Kansas Turnpike. We deny certification of this question because it was first posed after the moving party had been subject to an adverse decision in district court, see Massengale, 30 F.3d at 1331, and because the totality of the circumstances test as set forth in Seibert is broad enough to encompass such evidence. A defendant is of course free to attempt to persuade a jury to accord such evidence little weight.

-13-

**C**

The question we must resolve is whether the evidence presented at trial, viewed in the light most favorable to Storts, demonstrates that under the totality of the circumstances having a direct relationship to her abduction, Hardee's could have reasonably foreseen that its customers were exposed to a risk of peril above and beyond the ordinary and that it failed to provide reasonable security in light of such a risk.

Seibert instructs us that "perhaps the most significant" circumstance tending to demonstrate the foreseeability of harm is prior incidents of crime. Seibert, 856 P.2d at 1339. Although Storts cannot identify a prior abduction from this particular Hardee's location, Seibert rejects the need for identical prior incidents. Id. at 1339-40. Rather, we examine the record for evidence of prior incidents having "a direct relationship to the harm incurred." Id. at 1339. There was no evidence of violent crime at the Belle Plaines Hardee's in the three years preceding the attack on Storts, although there was a police report of a man arrested at the nearby Belle Plaines service station for aggravated assault using a gun. There was evidence of a shooting and a murder on the turnpike near the Belle Plaines service area. Evidence of crimes at other Hardee's restaurants and other service areas along the turnpike was more abundant: numerous robberies, one involving an armed kidnaping and another an assault in a bathroom, and

various disturbances and fights, including an attack on a Hardee's patron in a service area parking lot. A victim of an abduction and rape reported the crime at the Lawrence service area Hardee's. Elsewhere on the turnpike there was evidence of an assault on a trooper with intent to kill and an arrest for battery of an officer.

The second circumstance relevant to foreseeability specifically endorsed in Seibert is whether the business is located in a high crime area. See id. Based on reports of crimes along the Kansas Turnpike, a range of other factors, and their personal experience, experts Michael Witkowski and Fred DelMarva testified that the risk of crime, including abduction, at the Belle Plaines Hardee's was greater than usual. While Hardee's emphasizes that these experts were unable to provide concrete data comparing the rate of crime along the Turnpike to other areas, the totality of the circumstances test does not require comparative statistical evidence to show foreseeability "above and beyond the ordinary." Seibert, 856 P.2d at 1338.

The nature and location of the restaurant are additional circumstances that Seibert suggests are appropriate to consider under the totality of the circumstances test. See id. at 1336. There was substantial evidence tending to prove that fast food restaurants generally, and turnpike locations in particular, faced a higher risk of crime than ordinary and that this was well known in the

-15-

industry. Witkowski testified that the most frequent area of criminal attacks at fast food restaurants was their parking lots. Evidence established that several factors related to the location of the Belle Plaines Hardee's increased the risk of criminal activity there: It was located on the Kansas Turnpike, a crime corridor with a high crime rate; it experienced an exceptionally high volume of customers; and the parking lot was isolated, lacking natural surveillance otherwise afforded by the presence of other businesses and activities. Two managers of the Belle Plaines Hardee's testified that they were aware of and concerned about security risk problems in the parking lot and believed the rear of the restaurant posed a special risk.

There was also considerable testimony concerning the appropriateness of security measures at the Belle Plaines Hardee's and the feasibility of enhanced measures, both of which are factors relevant to a foreseeability analysis. See Seibert, 856 P.2d at 1339-40. Plaintiff's experts testified that surveillance, either natural surveillance from surrounding businesses and activities, surveillance from within the restaurant through windows, or the use of surveillance cameras, are significant crime deterrents used in most Hardee's and other fast food restaurants. In some Hardee's restaurants, the crime rate, primarily armed robberies, had fallen by as much as 84% after surveillance cameras were installed. At Belle Plaines, the area where Storts parked and was abducted was at the rear of the

restaurant near the trash dumpsters and an employee entrance. The employee entrance had no window. In order to get to the closest customer entrance, a recessed door, Storts had to walk along a windowless wall. Plaintiff's experts testified that this parking area surprisingly had no natural surveillance and fell far below industry standards. They suggested that Hardee's should have installed security cameras, windows facing the parking area, and/or a window or peephole in the rear employee entrance, and they testified that such measures would have been cost-effective. The convenience store at the opposite end of the Belle Plaines service area had installed surveillance cameras.

Whether this evidence is adequate to support a jury determination of liability under Seibert can be determined by measuring it against the evidence presented in two Kansas cases holding, as a matter of law, that a property owner did not breach its duty to provide security and therefore was not liable for injuries to guests caused by third parties. In Gragg v. Wichita State Univ., 934 P.2d 121, 135 (Kan. 1997), the Kansas Supreme Court held that a university could not have reasonably foreseen the shooting of an individual on its campus following a festival and that the security provided was adequate. Applying Seibert, the court found evidence of a student shot during a different festival on a different part of campus two years earlier and of a high crime rate in a neighborhood bordering the campus to be insufficient to overcome a motion for summary judgment. See id.

This conclusion relied in significant part on the fact that over 100 security personnel were present at the festival and that "the security and lighting were adequate." Id. At issue in Weroha v. Craft, 951 P.2d 1308 (Kan. Ct. App. 1998), was a business owner's liability for an assault inside a pinball arcade. The court granted summary judgment in favor of the business owner, finding there was no evidence that the arcade was in a high crime area and no basis from which to infer that violent activity had occurred previously in the arcade or that pinball arcades in general experience a high rate of crime. See id. at 1313-14.

The evidence of foreseeability in the present case, although not overwhelming, is more substantial than the evidence in Gragg or Weroha. Unlike either of those cases, the record before us contains evidence that the Kansas Turnpike, and other Hardee's along the Turnpike, had been the sites of multiple violent crimes in the preceding three years. Furthermore, unlike Weroha, the evidence demonstrates that fast food restaurants experience a high rate of crime, the Belle Plaines Hardee's and its parking lot were especially vulnerable, and the foreseeable risk of crime at that location was greater than usual. Finally, unlike Gragg, the jury heard opinion testimony that reasonable, widely-used security measures were not employed and the security in place was below industry standards. Under the totality of the foregoing circumstances, and considering the evidence in the light most favorable to Storts, we hold a reasonable juror could

-18-

conclude that Hardee's should have foreseen a risk of harm to its patrons above and beyond the ordinary and nevertheless failed to take reasonable security measures to deter such harm.

## IV

In addition to the duty to provide security, Storts alleged that Hardee's breached its duty of reasonable care by failing to warn her of a dangerous condition on its property.  Hardee's now argues the district court's instructions to the jury on both duties misstated the law, were unsupported by the evidence, and had prejudicial titles.  We review de novo the district court's instructions

> to determine whether, as a whole, the instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards.  Assuming the instruction[s] properly sets forth the relevant law, we review the district court's decision to give the particular instruction[s] for an abuse of discretion.

Kinser v. Gehl Co., 184 F.3d 1259, 1272 (10th Cir. 1999) (internal quotations and citations omitted).  An instruction should not be given unless supported by sufficient competent evidence.  See Farrell v. Klein Tools, Inc., 866 F.2d 1294, 1297 (10th Cir. 1989).  Reversal is required if submission of the erroneous instruction was prejudicial.  See id. at 1298.[2]

---

[2] In a federal diversity case, the substance of jury instructions is governed by state law but the grant or denial of an instruction as a matter of procedure is governed by federal law.  See Farrell, 866 F.2d at 1296.

-19-

**A**

The two duty instructions were entitled "Duty to Provide Security" and "Duty to Warn of a Dangerous Condition." (III Appellant's App. at 516, 518.) During discussion of the instructions, Hardee's objected to the duty to provide security title. The district court explained the reason for the title was to make clear that two separate duties were at issue. The court then asked if Hardee's "had a problem with that," to which Hardee's responded "No, sir." (IV Tr. at 954.) We find that this constitutes a waiver of objection to the titles, and therefore this issue was not properly preserved for appellate review. See Fed. R. Civ. P. 51. Alternatively, insofar as this comment can be construed, as Hardee's argues, as simply expressing "an understanding of the Court's position," (Appellant's Reply Br. at 29), Hardee's fails to identify where in the record it distinctly stated the "grounds of the objection," Fed. R. Civ. P. 11. We further hold that the instruction titles do not constitute plain error because they are not "'patently plainly erroneous and prejudicial.'" United Drilling Co. v. Enrol Oil & Gas Co., 108 F.3d 1186, 1190 (10th Cir. 1997) (quoting Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 924 (10th Cir. 1984)).

**B**

The instruction on the duty to provide security stated in part:

The operator of a business has a duty to provide security for customers on the premises when circumstances exist from which the

-20-

operator could reasonably foresee there is a risk of harm above and beyond the ordinary and that appropriate security measures should be taken.

(III Appellant's App. at 516.) Hardee's contends the court should have instructed the jury that any foreseeable risk of harm must be "substantially" above and beyond the ordinary. In support of this contention, it relies on the statement in Seibert that the duty to provide security arises "only where the frequency and severity of criminal conduct substantially exceed the norm or where the totality of the circumstances indicates the risk is forseeably high." 942 P.2d at 1339. However, elsewhere in Seibert, somewhat different language is used: The duty arises "where circumstances exist from which the owner could reasonably foresee that its customers have a risk of peril above and beyond the ordinary . . . ." Id. at 1338. The instruction given by the district court simply adopts one of two formulations of the same concept. Furthermore, the formulation chosen is the one that appears in the Kansas Supreme Court's syllabus of the case, see id. at 540, and the Kansas Pattern Jury Instructions, see PIK Civil 3d 126.35. See also Webb v. ABF Freight Sys. Inc., 155 F.3d 1230, 1248 (10th Cir. 1998) (holding that "no particular form of words is essential if the instruction as a whole conveys the correct statement of the applicable law") (internal quotations and citation omitted). We conclude the instruction on the duty to provide security correctly stated the applicable law, provided the jury an ample understanding of the

applicable standards, and, as discussed above in Part III.B, was supported by sufficient competent evidence.

**C**

The instruction on the duty to warn of a dangerous condition stated:

An operator of a place of business which is open to the public owes a duty to the customer to use reasonable care, under all of the circumstances, in keeping the business place safe. This duty applies to all areas in the business used by the customer. The operator of the business must warn the customer of any dangerous condition which it knows about or should know about if it had exercised reasonable care in tending to the business.

The operator of a business has no duty to warn a customer of any condition known to the customer or which the customer should discover in the exercise of reasonable care.

(III Appellant's App. at 518.)

The propriety of this instruction is the final question that Hardee's requests we certify to the Kansas Supreme Court, and once again we deny that request. Hardee's did not request certification of this question prior to the adverse judgment, and, as discussed presently, it is resolved by controlling precedent. See Massengale, 30 F.3d at 1331.

The duty expressed in this instruction, although an accurate statement of the law, is not applicable to this case. Rather, it applies when a physical condition of the business premises is the direct cause of the plaintiff's injury. The pattern jury instruction upon which this instruction is based cites as authority

Thompson v. Beard & Gabelman, Inc., 216 P.2d 798 (Kan. 1950). See PIK Civil 3d 126.03. In that case, the plaintiff was injured when, after entering what she believed to be a store dressing room, she fell down a dimly-lit stairway. See id. at 800. The court described the store owner's duty in language almost identical to that in the instruction before us. See id. Similarly, every other Kansas case reciting this standard of care involved a physical condition of the premises that was the direct cause of the plaintiff's injuries. See, e.g., Lyons v. Hardee's Food Sys., Inc., 824 P.2d 198, 199, 204 (Kan. 1992) (the plaintiff tripped on a tree grate on the sidewalk area outside a restaurant); Noland v. Sears, Roebuck & Co., 483 P.2d 1029, 1031, 1032 (Kan. 1971) (the plaintiff fell down stairs lacking handrails); Smith v. Mr. D's, Inc., 415 P.2d 251, 253 (Kan. 1966) (the plaintiff slipped on a piece of lettuce). The evidence in this case tended to demonstrate that a lack of windows or surveillance created an environment in which criminal attack was more likely to occur. This simply is not the sort of dangerous condition that gives rise to a duty to warn of a dangerous condition under Kansas law.

As Storts points out, there are situations in which Kansas law recognizes a duty to warn and protect in the context of criminal assaults. See, e.g., Gould v. Taco Bell, 722 P.2d 511 (Kan. 1986). The circumstances giving rise to such a duty, however, are materially different from those in this case. While Gould held

-23-

that a business proprietor's duty to warn and protect customers against reasonably foreseeable dangers can include the duty to forestall or prevent an assault against a customer by a third party, the Gould court specifically limited such a duty: It "'does not arise until the impending danger becomes apparent to him, or the circumstances are such that a careful and prudent person would be put on notice of the potential danger.'" Id. at 515 (quoting Kimple v. Foster, 469 P.2d 281, 283 (Kan. 1970)). The record in this case is completely void of evidence that Hardee's or any of its employees or agents knew or should have known that the three men would rob, abduct, or otherwise assault Storts. Indeed, Storts does not even allege that Hardee's could or should have intervened in her abduction. Seibert, clearly the more factually analogous case, distinguishes Gould and Kimple on precisely the same grounds. 856 P.2d at 1338 ("Neither the premises owner nor any of its employees were aware of the presence of the plaintiff or her attackers or that an attack was occurring."). Moreover, to the extent the duty to warn of dangerous condition instruction purported to articulate the duty described in Gould and Kimple, it misstated the law because it did not require the jury to find that Hardee's failed to forestall or prevent an apparent impending danger, namely an attack by third parties.

Similarly, Nero, 861 P.2d at 768, does not support the application of the duty to warn of a dangerous condition instruction to this case. In Nero, a

university student was assaulted by a fellow student in a common area of their dorm. See id. at 772. The court held that "a university has a duty of reasonable care to protect [or warn] a student against certain dangers, including criminal actions against a student by another student or third party if the criminal act is reasonably foreseeable and within the university's control." Id. at 780. Because the university knew the assailant had been charged with rape three weeks earlier, and because it placed the assailant in a coed dorm with the victim, the court concluded that the foreseeability of the attack was a factual issue. See id.

By contrast, in the instant case, Storts does not allege that Hardee's knew her abductors were in the parking lot, let alone inclined towards violence, or had control over their presence. As the Seibert court stated when distinguishing Gould and Kimple:

> Rather, the liability sought to be imposed herein is predicated upon the frequency and severity of prior attacks against different patrons by presumably different attackers at different times and in different areas . . ., plus the totality of the circumstances making the attack upon the plaintiff or some other business invitee foreseeable to the defendant, who then had a duty to take appropriate security action to prevent or make less likely the same from occurring.

856 P.2d at 1338. That Nero is analogous to Gould and Kimple but not Seibert is reinforced by the fact that the majority cites to Gould but not Seibert, see Nero, 861 P.2d at 779-80, even though Seibert was decided less than two months earlier and is discussed by the dissent, see id., 861 P.2d at 784-85 (Six, J., dissenting).

-25-

It is the duty described in <u>Seibert</u>, and not the duty described in <u>Thompson</u>, <u>Gould</u>, or <u>Nero</u>, that applies in this case. Therefore, the district court erred when it submitted to the jury the duty to warn of a dangerous condition instruction.

"Generally, where a jury has returned a general verdict and one theory of liability upon which the verdict may have rested was erroneous, the verdict cannot stand because one cannot determine whether the jury relied on the improper ground." <u>Anixter v. Home-Stake Prod. Co.</u>, 77 F.3d 1215, 1229 (10th Cir. 1996) (citing <u>Sunkist Growers, Inc. v. Winkler & Smith Citrus Prods. Co.</u>, 370 U.S. 19, 29-30 (1962)); <u>see also</u> <u>Morrison Knudsen Corp. v. Fireman's Ins. Fund Co.</u>, 175 F.3d 1221, 1254 (10th Cir. 1999); <u>Franklin v. Northwest Drilling Co., Inc.</u>, 524 P.2d 1194, 1203 (Kan. 1974). This case was submitted to the jury on two theories. Submission of the duty to provide security theory was proper, but submission of the duty to warn of a dangerous condition theory was erroneous. Because the verdict form did not specify upon which theory the verdict rested, we cannot say "'with absolute certainty' that the jury was not influenced by the submission of the improper or erroneous instruction." <u>Anixter</u>, 77 F.3d at 1229 (quoting <u>Farrell</u>, 866 F.2d at 1299-1301 (10th Cir. 1989)). Therefore, we reverse.

## V

The final issue presented by Hardee's is whether the district court erred by admitting irrelevant and unreliable expert testimony. While the precise nature of

-26-

the objection is not entirely clear, Hardee's appears to contest both the foundation for the expert testimony as well as the relevance of particular statements. We address this issue because it is likely to recur on re-trial.

Abuse of discretion is the proper standard for review of a district court's decision to review or exclude expert testimony. See General Elec. Co. v. Joiner, 522 U.S. 136, 141 (1997). In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 1174-75 (1999), the Supreme Court held that a district court has a gatekeeping obligation to ensure the relevance and reliability of all expert testimony when the data, principles, methods, or application upon which the testimony is based are called into question. See also Kinser, 184 F.3d at 1271. "However, the Court also held that trial courts have great latitude in determining the methods by which it tests the reliability of expert testimony. Indeed, the abuse of discretion standard 'applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion.'" United States v. Charley, 189 F.3d 1251, 1261 n.11 (10th Cir. 1999) (quoting Kumho Tire, 119 S. Ct. at 1176). "Even though the trial court in this case did not have the benefit of Kumho Tire's direction, its evidentiary decisions do not warrant reversal if it determined, in some apparent manner, that the expert testimony it admitted was reliable." Id. (citing Kumho Tire, 119 S. Ct. at 1179). In the absence of adequate findings on an expert's qualifications, we conduct a de novo review of the entire

record to determine whether that omission is harmless.  See Kinser, 184 F.3d at 1271.

Hardee's first challenged the relevance and reliability of Storts's experts when their affidavits were submitted in response to its motion for summary judgment on the question of duty, alleging that the opinions expressed therein would not be admissible at trial as required by Fed. R. Civ. P. 56(e).  The court found that the backgrounds of experts Mellard and DelMarva qualified them to express opinions, based on their experience and training, as to the foreseeability of crime at the Belle Plaines Hardee's.  With regard to Witkowski, the district court conducted a separate hearing to determine the reliability of the theory of Crime Prevention Through Environmental Design ("CPTED"), upon which many of his opinions were based.  The appendices do not contain the district court's ruling on the reliability of Witkowski's testimony, but it is apparent that he was permitted to testify as an expert on CPTED.

The district court did not abuse its discretion in determining that the experts' proffered testimony was reliable and relevant.  While it did not conduct a separate hearing for Mellard and DelMarva, it did review evidence of their qualifications.  Our own review confirms its conclusions.  Mellard has an extensive background in law enforcement and crime prevention and has personal knowledge of the Kansas Turnpike, and DelMarva has extensive background in

the restaurant management and security, particularly with fast food restaurants. This knowledge and experience supports the reliability of their relevant testimony concerning whether Hardee's should have foreseen, and taken steps to reduce the likelihood of, criminal attacks at Belle Plaines. With respect to Witkowski, Storts presented, and Hardee's failed to refute, evidence that CPTED is widely accepted in the security field and was employed by Hardee's as part of its security program. This theory served as the basis for Witkowski's relevant opinion that the likelihood of the attack on Storts could have been reduced by improved surveillance.

With respect to Hardee's challenges to individual statements made by the experts, Hardee's rarely indicates where in the record we can find the offending testimony and the objections thereto. See United States v. Rodriguez-Aguirre, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) (holding that the appellant must provide specific citations in support of its allegations that the trial court admitted prejudicial evidence). We thus address only those statements identified with sufficient particularity.

On two occasions, Hardee's objected to expert testimony on the ground that it invaded the province of the jury: when Witkowski stated the abduction of Storts "was foreseeable based upon other types of crimes throughout the Hardee's chain of restaurants and also crime along the contiguous highway on which it was

located" (I Tr. at 172); and when Mallard stated, in effect, that it was unreasonable for a company to look only at convictions, and not incident reports, when assessing the foreseeability of criminal acts. Federal Rule of Evidence 704(a) permits expert testimony that "embraces an ultimate issue to be decided by the trier of fact," but experts are still prohibited from testifying to "legal conclusions drawn by applying the law to the facts," A.E., by and through Evans v. Independent Sch. Dist. No. 25, 936 F.2d 472, 476 (10th Cir. 1991) (citing United States v. Jensen, 608 F.2d 1349, 1356 (10th Cir. 1979); Frase v. Henry, 444 F.2d 1228, 1231 (10th Cir. 1971)). Mallard and Witkowski's opinions on reasonableness and foreseeability, respectively, do not offend this prohibition. They do not "'merely tell the jury what result to reach,'" nor are they "'phrased in terms of inadequately explored legal criteria.'" Specht v. Jensen, 853 F.2d 805, 807 (10th Cir. 1988) (en banc) (quoting Fed. R. Evid. 704 advisory committee's note). Following Witkowski's statement, he was questioned in detail concerning the number and types of crimes occurring at other Hardee's and along the Kansas Turnpike. Mallard's opinion was preceded and followed by a discussion of the reasons that conviction statistics alone under-represent criminal activity, and an assertion that the standard in the security industry is to use incident reports. Moreover, the district court repeatedly warned the jury that the ultimate issues of law and fact were for it to determine. We have held that it is not an abuse of

discretion to admit expert testimony embracing ultimate issues of fact when the expert

> explained the bases for his opinions in sufficient detail to permit the jury to independently evaluate his conclusions. The legal terms used are not so complex or shaded with subtle meaning as to be beyond the understanding of the average person, and [the expert's] use of those terms did not conflict with the court's instructions. Finally the court instructed the jury that it was free to entirely disregard an expert's opinion "if you should conclude that the reasons given in support of the opinion are not sound."

Karns v. Emerson Elec. Co., 817 F.2d 1452, 1459 (10th Cir. 1987) (citations omitted). The testimony and cautionary instructions at issue here are qualitatively similar to those in Karns. Therefore, the district court properly overruled Hardee's' objections to this opinion testimony.

The district court's decision to admit evidence of "other crimes on the turnpike of a similar nature during a similar time period" also was not an abuse of discretion. (I Tr. at 126.) Hardee's argues that "distinct crimes occurring in distinct locations and under dissimilar circumstances" were not relevant to foreseeability. (Appellant's Br. at 50.) Seibert's totality of the circumstances test, however, only requires that the circumstances considered bear "a direct relationship to the harm incurred." Seibert, 856 P.2d at 1339. It does not require that prior crimes be identical in all respects. See id. We agree with the district court that violent crimes occurring along the turnpike in the three years preceding the attack on Storts were sufficiently similar to the crime at issue to be considered

under the totality of the circumstances test. There is little question that the more similar the previous incident the more probative it is of the foreseeability of the later crime, but this consideration goes to weight, not admissibility. Therefore, the district court did not abuse its discretion in finding the testimony relevant.

## VI

Having addressed Hardee's' claims on appeal, we now turn to the three assignments of error raised by Storts in her cross appeal: instructing the jury on contributory negligence; granting summary judgment for Hardee's on her undertaking of a duty theory; and granting summary judgment for Hardee's on her contract claim.

## A

"The question of contributory negligence is ordinarily a question for the jury and is to be determined by the court only when the facts are such that reasonable minds might not differ." Gardner v. Pereboom, 416 P.2d 67, 72 (Kan. 1966) (citing In re Estate of Lloyd, 290 P.2d 817 (Kan. 1955)). In addition, an instruction should not be given unless supported by sufficient competent evidence. See Farrell, 866 F.2d at 1297. When determining whether the question of comparative negligence should be submitted to the jury, the evidence must be

considered in the light most favorable to the defendant.  See Cox v. Lesko, 953

P.2d 1033, 1038 (Kan. 1998).[3]

Considering the evidence in the light most favorable to Hardee's, we find

there was sufficient competent evidence to support the submission of the

comparative fault question to the jury.  Storts, like everyone else, has a general

duty to exercise ordinary or reasonable care to avoid harm to herself and others.

See Stingley v. Allison, 436 P.2d 387, 389 (Kan. 1968).  There is some evidence

that Storts breached this duty and that that breach was a cause of her abduction:

She approached two unknown men standing next to an unusually positioned car,

with a third man at the wheel, in an area of a remote parking lot hidden from

view, without looking to see if there was anyone else in the parking lot.  We

cannot say it was error to let the jury determine whether a reasonable person

would have taken some precautionary measures in that situation.

**B**

We review de novo the district court's grant of Hardee's' motion for

 summary judgment on the issues of undertaking of duty and breach of contract.

See Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995).  Summary

judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

---

[3]  Contrary to Storts's assertion, Hardee's' closing argument cannot be
fairly read as waiving the comparative fault argument or admitting that Storts was
not negligent.

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In <u>Schmeck v. Shawnee</u>, 651 P.2d 585, 596 (1982), the Kansas Supreme Court adopted the concept of tort liability for the undertaking of duty as defined by the Restatement (Second) of Torts § 324A (1965):

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

"In all the cases [where § 324A was held to create a duty] there was some duty by another to a third person assumed by the party sought to be held liable which, when the duty was breached, led to the injury of the third person." <u>Gooch v. Bethel A.M.E. Church</u>, 792 P.2d 993, 1000 (Kan. 1990). In order to assume a duty under § 324A, the defendant must perform an affirmative act or enter into an agreement. "Without an affirmative act or an agreement, there is no duty owed under § 324A." <u>P.W. v. Kansas Dep't of Soc. & Rehabilitative Servs.</u>, 877 P.2d 430, 435 (Kan. 1994). Thus, Storts must demonstrate a genuine issue of material

fact as to whether Hardee's assumed a duty owed to Storts by a third party through some affirmative act or agreement.

Storts argues that Hardee's undertook a duty to provide security by virtue of its internal policies and its lease agreement with the KTA. Hardee's' internal policies clearly do not provide a basis for § 324A liability. By adopting those policies, Hardee's did not assume a duty owed to Storts, or the public at large, by a third party. Nor did Hardee's undertake a duty to protect Storts from attacks by third parties by entering into the lease with the KTA. Storts relies on two provisions of the lease requiring Hardee's to maintain the safety of the property "in a manner befitting the Turnpike." (II Appellee's Supp. App. at 273, 284.) Parties are presumed to contract in light of existing law, and we will not interpret a contract to impose duties exceeding those imposed by law unless such a heightened duty is apparent from the language of the contract. See Schoke v. Franklin, 633 P.2d 1151, 1153 (Kan. Ct. App. 1981). We agree with the district court that the contract provisions requiring maintenance of safety did not impose on Hardee's duties exceeding those otherwise imposed on business proprietors by Kansas law. See Storts, 919 F. Supp. at 1519. Therefore, Storts's § 324A claim was properly dismissed on summary judgment.

For similar reasons, we hold that the district court properly granted summary judgment in favor of Hardee's on Storts's breach of contract claim.

Storts alleged that she was an intended third party beneficiary of the lease between Hardee's and the KTA and that Hardee's had breached that contract by failing to keep the premises safe. Even if we assume Storts was an intended third party beneficiary of the lease, we agree with the district court that the contract does not impose a duty to keep the premises safe greater than that imposed by law. See Storts, 919 F. Supp. at 1519-20. Therefore, Storts's claim sounds in tort, not contract. Cf. Young v. Kansas State Park & Resources Auth., 627 P.2d 384, 385-88 (Kan. Ct. App. 1981).

## VII

Because the district court erroneously and prejudicially submitted to the jury instructions on the duty to warn of a dangerous condition, we **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge